**DAVID B. JONELIS (BAR NO. 265235)**
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
Email: djonelis@lavelysinger.com

Attorneys for Defendants
THE ROYALTY FAMILY, INC.
ANDREA ESPADA, and ALI SALEH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL RECORDS, LLC, a California Limited Liability Company, <br><br>Plaintiff, <br><br>vs. <br><br>THE ROYALTY FAMILY, INC., a California Corporation; ANDREA ESPADA, an individual; ALI SALEH, an individual, <br><br>Defendants. | CASE NO. 2:23-cv-05797-PA-BFM <br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br>Case filed: July 18, 2023 <br>FPTC: July 19, 2024 <br>Trial date: August 13, 2024 <br>Judge: Hon. Percy Anderson |

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to Local Rule 16-4 and the Court's Scheduling Order, Defendants THE ROYALTY FAMILY, INC., ANDREA ESPADA, and ALI SALEH (collectively, "Defendants") hereby respectfully submit this Memorandum of Contentions of Fact and Law in anticipation of the July 19, 2024 Final Pretrial Conference and the August 13, 2024 trial date.

## I.  PLAINTIFF'S CLAIMS AND ELEMENTS AND DEFENDANTS' KEY EVIDENCE IN OPPOSITION THERETO [L.R. 16-4.1(a), (b), (c)]

Plaintiff CONTINENTAL RECORDS LLC ("Plaintiff") has indicated it intends to pursue to two claims for relief – (1) Copyright Infringement, and (2) Tortious Interference With Contract.

**Plaintiff's First Claim For Relief: Copyright Infringement.**

Summary:  Plaintiff claims that Defendants infringed Plaintiff's alleged copyrights in the lyrics of the songs "One Girl" (erroneously referred to by Plaintiff as "Girl") and "Baby Girl."

Elements: Plaintiff has the burden of proving:

(1)  Plaintiff is the owner of a valid copyright – which in this case (since Plaintiff does not claim to be the actual creator of the subject lyrics) means that Plaintiff received a transfer of the copyright from the actual creators; and

(2)  Defendants copied original expression from the copyrighted work. As the Ninth Circuit has explained, this element contains two separate components: "copying" and "unlawful appropriation."

See Ninth Circuit Manual of Model Jury Instructions: Civil §§ 17.5, 17.6 (2024); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020)

Evidence:

***ELEMENT 1:***

- There is substantial evidence showing that Plaintiff is not the owner of the copyright in the subject lyrics, including most significantly:
    - As Defendants Andrea Espada and Ali Saleh will attest at trial, and as further evidenced by text correspondence between Defendants and third-party Wilder Cano and agreements signed by Mr. Cano, Mr. Cano was simply a <u>co-author</u> of the lyrics (alongside Defendant Espada, Defendant Saleh, and Defendants' minor child Ferran), and in any event he assigned his interest in those lyrics to Defendants.
    - Pursuant to his March 2020 Personal Services Agreement with Defendants, and as a condition to his employment as Defendants' personal assistant, Mr. Cano validly assigned to Defendants <u>all</u> of his rights in whatever creative works he authored during the course of his employment, which would necessarily include the subject lyrics.  Thus, to the extent that Mr. Cano authored the subject lyrics (either by himself or jointly with Defendants), the copyrights therein are owned entirely by Defendants.
    - Pursuant to his June 2020 Music Release Agreement with Defendants, Mr. Cano specifically granted Defendants the "exclusive right" to exploit the song "Baby Girl" and to retain all of the royalties in connection therewith.
    - When he first contacted Defendants by email in May 2020, Plaintiff's principal Ivan Leon specifically acknowledged that Mr. Cano had already "signed an agreement" with Defendants.
    - To the extent that Plaintiff now contends after-the-fact that it is not Mr. Cano's signature on the Personal Services Agreement and

Music Release Agreement, Defendants' retained handwriting expert Andrea McNichol has refuted this contention in her written report, in which she unequivocally concluded that Mr. Cano did in fact sign the two dispositive agreements. Ms. McNichol's conclusion was based on other documents with an identical signature that Mr. Cano cannot deny signing (such as a document that Mr. Cano undisputedly emailed to Defendants and Plaintiff's own agreement with Mr. Cano attached to its Complaint herein).

- o It is undisputed that as part of his employment by Defendants, Mr. Cano signed a non-disclosure agreement. Mr. Cano's signature on that non-disclosure agreement is nearly identical to his signature on the dispositive agreements that Plaintiff now claims he did not sign.

*ELEMENT 2:*

- Based on the evidence described above in connection with element 1, Defendants could not have "unlawfully appropriated" the copyrights in the subject lyrics for the simple reason that they own those copyrights (either entirely or jointly with Mr. Cano). *See Oddo v. Ries*, 743 F.2d 630, 632 (9th Cir. 1984) ("[a] co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright");

**Plaintiff's Second Claim For Relief: Tortious Interference.**

Summary: Plaintiff claims that Defendants interfered with two alleged contracts between Plaintiff and Wilder Cano, pursuant to which Plaintiff was purportedly granted the exclusive right to exploit Mr. Cano's works of authorship and name and likeness for thirteen years.

Elements:

Plaintiff has the burden of proving:

(1) The existence of a valid and enforceable contract between plaintiff and another;
(2) defendant's awareness of the contractual relationship;
(3) defendant's intentional and unjustified inducement of a breach of the contract;
(4) a subsequent breach by the other caused by defendant's wrongful conduct;
(5) damages.

*See Quiroz v. Aranda Cervantes,* 2021 WL 6618804, at *6 (C.D. Cal. Nov. 17, 2021) (citing to *Hahn v. Diaz-Barba*, 194 Cal. App. 4th 1177, 1196 (2011)); *Elettronica GmBH v. Radio Frequency Simulation Sys., Inc.*, 2018 WL 1942562, at *4 (C.D. Cal. Feb. 26, 2018) (citing to *Richardson v. La Rancherita La Jolla, Inc.*, 98 Cal. App. 3d 73, 80 (1979)).

Evidence:

***ELEMENT 1:***

- Based on the language of the subject contracts between Plaintiff and third-party Wilder Cano, it is questionable whether the agreements are even enforceable in the first place. Specifically, to the extent that the agreements preclude Mr. Cano from "perform[ing] any material for any person other than Continental Records" for a period of thirteen years, the agreements constitute <u>unlawful restraints on trade</u> under California law, and are thus void *ab initio*. *See* Cal. Bus. & Prof. Code § 16600 ("every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"). This issue may be appropriate for post-trial briefing in the unlikely event that Plaintiff can satisfy all of the other requisite elements.

***ELEMENT 2:***

- Plaintiff has produced no evidence in this case demonstrating that any Defendant was ever made aware of the relevant terms of the alleged contractual relationship between Plaintiff and Wilder Cano. In fact, prior to the filing of this action, Defendants Espada and Saleh will attest that they never even saw a copy of the subject agreements.
- When he first contacted Defendants by email in May 2020, Plaintiff's principal Ivan Leon merely asserted that Mr. Cano was "exclusive to Continental records for about three years and will be for about seven more." However, beyond that conclusory statement (which Defendants will testify was negated by Mr. Cano's contrary statements to them), Plaintiff never informed Defendants of any actual terms of any actual agreements between Plaintiff and Mr. Cano, nor were Defendants ever provided with a copy of any such agreements.

***ELEMENT 3:***

- As evidenced by the March 2020 Personal Services Agreement between Mr. Cano and Defendants, Mr. Cano started working for Defendants (and prospectively assigned them his rights in the subject lyrics) long before Defendants were even made aware of the alleged contractual relationship between him and Plaintiff. Thus, they could not as a matter of fact have intended to interfere with that relationship.
- Likewise, as evidenced by the dates of Defendants' YouTube videos that Plaintiff claims infringed its rights, Wilder Cano had already repeatedly appeared in Defendants' videos (including by performing one of the two songs at issue) long before Plaintiff ever notified Defendants of its alleged contractual relationship. Thus, any alleged breach by Mr. Cano of his purported "exclusivity" requirements with Plaintiff commenced

1
2
prior to when Defendants could have even known of that contractual relationship.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
- Even assuming that Defendants were made aware of the terms of a valid agreement between Plaintiff and Mr. Cano as of May 2020 (when they were first contacted by Plaintiff's principal Ivan Leon), they had already entered into their own preexisting contract with Mr. Cano by that time, under which he had already agreed to render personal services for them (which would include producing and appearing in their YouTube videos), and under which he had already agreed to prospectively grant them ownership over the subject two compositions.  Thus, Defendants were justified to protect their own economic interests under their own valid contract with Mr. Cano, under which he had already appeared in their YouTube videos and under which he had already agreed to prospectively grant them ownership over the subject two compositions. *See SIC Metals, Inc. v. Hyndai Steel Co.*, 442 F. Supp. 3d 1251, 1256 (C.D. Cal. 2020) ("if a defendant's 'conduct was lawful and undertaken to enforce its rights,' it cannot be held liable for intentional interference with a contract even if it knew that such conduct might interrupt a third party's contract."); *see also Pankow Const. Co. v. Advance Mortg. Corp.*, 618 F.2d 611, 616 (9th Cir. 1980) ("if two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract even though the necessary result will be to cause a breach of the other contract").

24
***ELEMENT 4:***

25
26
27
28
- The evidence, including the testimony of Defendants Espada and Saleh and the agreements signed by Mr. Cano, will show that Mr. Cano voluntarily and without any coercion by Defendants agreed to appear in Defendants' YouTube videos, and likewise voluntarily and without any

coercion agreed to co-author the subject compositions as part of his personal services for Defendants. In other words, Mr. Cano was never forced to appear in any video, nor was he compelled to co-write lyrics with them. Consequently, any alleged "breach" of Mr. Cano's purported contractual relationship with Plaintiff was caused solely by Mr. Cano himself, and not by any conduct of Defendants.

***ELEMENT 5:***

- Plaintiff has produced no evidence in this case showing that it was harmed in any way, shape, or form by Mr. Cano's conduct in (1) appearing in Defendants' YouTube videos and (2) co-writing music with Defendants. Nor is there any evidence that Plaintiff has ever accused Mr. Cano of breaching his contractual obligations to Plaintiff, or that Plaintiff has ever told Mr. Cano that he owes damages to Plaintiff on account of his alleged breach.
- While there is no evidence of any cognizable damages to Plaintiff, the evidence shows that Plaintiff actually benefitted from Mr. Cano's relationship with Defendants, and that Plaintiff recognized that benefit. Indeed, when Plaintiff's principal first contacted Defendants in May 2020, he sought to capitalize on Mr. Cano's relationship with Defendants, writing: "I can use some promotion from you guys."
- The evidence will likewise show that Mr. Cano's relationship with Defendants substantially increased his popularity as an artist, which would obviously have inured to the benefit of Continental.

## II. DEFENDANTS' COUNTERCLAIMS AND AFFIRMATIVE DEFENSES AND DEFENDANTS' KEY EVIDENCE IN SUPPORT THEREOF [L.R. 16-4.1(d), (e), (f)]

Defendants have not asserted any counterclaims herein.

To the extent that the issues of "copyright co-authorship," "copyright assignment," and/or "justified interference" (already addressed above in connection with the elements of Plaintiff's *prima facie* claim for relief) are considered affirmative defenses, those issues are further addressed below:

**First Affirmative Defense: Co-Authorship**

<u>Summary</u>: Defendants contend that the subject lyrics were jointly authored by Wilder Cano, Defendant Andrea Espada, Defendant Ali Saleh, and Defendants' minor child Ferran, and thus Defendants cannot be held liable for infringing their own copyrights. *See Oddo v. Ries*, 743 F.2d 630, 632 (9th Cir. 1984) ("[a] co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright").

<u>Elements</u>: To the extent this is an affirmative defense, Defendants have the burden of proving that the subject lyrics were a "joint work," meaning "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." *See* 17 U.S.C. §§ 101; *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990) ("joint authorship requires each author to make an independently copyrightable contribution [to the joint work]").

<u>Evidence</u>: As Defendants Andrea Espada and Ali Saleh will attest at trial, and as further evidenced by text correspondence between Defendants and third-party Wilder Cano, Mr. Cano knowingly and intentionally co-authored the subject lyrics with Defendant Espada, Defendant Saleh, and Defendants' minor child Ferran.

**Second Affirmative Defense: Waiver/Assignment**

<u>Summary</u>: Defendants contend that Wilder Cano, Defendants' co-author of the subject lyrics (and Plaintiff's alleged assignor of its rights in those lyrics), validly assigned his rights in those lyrics to Defendants, thus waiving any right by Plaintiff to claim copyright in those lyrics.

8

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Elements: To the extent this is an affirmative defense, Defendants have the burden of proving that Wilder Cano validly assigned to them, by a written assignment agreement, all of his rights in the subject lyrics. *See* 17 U.S.C. § 201(d)(1) ("Ownership of a copyright may be transferred in whole or in part by any means of conveyance."); 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent").

Evidence: There is substantial evidence that Mr. Cano validly assigned his rights in the subject lyrics to Defendants, including:

- Pursuant to his March 2020 Personal Services Agreement with Defendants, and as a condition to his employment as Defendants' personal assistant, Mr. Cano assigned to Defendants <u>all</u> of his rights in whatever creative works he authored during the course of his employment, which would necessarily include the subject lyrics. Thus, the copyrights in the subject lyrics are owned entirely by Defendants.

- Pursuant to his June 2020 Music Release Agreement with Defendants, Mr. Cano specifically granted Defendants the "exclusive right" to exploit the song "Baby Girl" and to retain all of the royalties in connection therewith.

- When he first contacted Defendants by email in May 2020, Plaintiff's principal Ivan Leon specifically acknowledged that Mr. Cano had already "signed an agreement" with Defendants.

- To the extent that Plaintiff now contends after-the-fact that it is not Mr. Cano's signature on the Personal Services Agreement and Music Release Agreement, Defendants' retained handwriting expert Andrea McNichol has refuted this contention in her written report, in which

> she unequivocally concluded that Mr. Cano did in fact sign the two dispositive agreements. Ms. McNichol's conclusion was based on other documents with an identical signature that Mr. Cano cannot deny signing (such as a document that Mr. Cano undisputedly emailed to Defendants and Plaintiff's own agreement with Mr. Cano attached to its Complaint herein).
>
> - It is undisputed that as part of his employment by Defendants, Mr. Cano signed a non-disclosure agreement. Mr. Cano's signature on that non-disclosure agreement is nearly identical to his signature on the dispositive agreements that Plaintiff now claims he did not sign.

**Third Affirmative Defense: Justified Interference**

Summary: Defendants contend that even if their conduct ultimately interfered with the alleged contractual relationship between Plaintiff and Wilder Cano, they were justified to protect their own economic interests under their own valid preexisting contract with Mr. Cano.

Elements: To the extent this is an affirmative defense, Defendants have the burden of proving that they their continuing relationship with Wilder Cano was lawful and undertaken to protect their own contractual rights, and that they resorted to legitimate means to secure Mr. Cano's performance of his contractual duties to them. *See SIC Metals, Inc. v. Hyndai Steel Co.*, 442 F. Supp. 3d 1251, 1256 (C.D. Cal. 2020) ("if a defendant's 'conduct was lawful and undertaken to enforce its rights,' it cannot be held liable for intentional interference with a contract even if it knew that such conduct might interrupt a third party's contract."); *see also Pankow Const. Co. v. Advance Mortg. Corp.*, 618 F.2d 611, 616 (9th Cir. 1980) ("if two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract even though the necessary result will be to cause a breach of the other contract").

1    Evidence:  As evidenced by Wilder Cano's March 2020 Personal Services
2    Agreement with Defendants, as well as the fact that Mr. Cano started rendering
3    his personal services for Defendants in or around February 2020, there was
4    already a valid contractual relationship in place between Mr. Cano and Defendants
5    by the time that Defendants were notified of the alleged contractual relationship
6    between Mr. Cano and Plaintiff.  Defendants were not required to terminate their
7    prior contract with Mr. Cano simply because Plaintiff subsequently claimed that it
8    had its own separate contractual relationship with him.

**III.    ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)]**

Plaintiff does not currently anticipate any evidentiary issues.

**IV.    ISSUES OF LAW [L.R. 16-4.1(i)]**

In addition to the legal issues set forth above in connection with the parties' claims and defenses, it is important for the Court to address the fact that one of Defendants' attorneys, Omid Khalifeh, is an anticipated material witness at trial. More specifically, Mr. Khalifeh has admitted in a sworn declaration that he had numerous conversations with third party Wilder Cano concerning the key issues in this case, including most importantly Mr. Cano's assignment of rights to Defendants and Mr. Cano's involvement in the creation of the subject lyrics.  The circumstances of these conversations are directly relevant to proving that Plaintiff (by way of its counsel) was plainly aware from the outset of this case that Mr. Cano lacked credibility with respect to his after-the-fact assertion that (1) he did not assign his rights to Defendants, and (2) Defendants did not co-write the subject lyrics.

Pursuant to California law, a lawyer may not act as both an advocate and a witness at trial without the informed consent of his or her client. *See Kennedy v. Eldridge*, 201 Cal. App 4th 1197, 1208 (2011) (advocate-witness rule "prohibits an attorney from acting both as an advocate and a witness in the same proceeding"); Cal. Rules of Prof. Conduct 3.7 ("A lawyer shall not act as an advocate in a trial in

which the lawyer is likely to be a witness unless: (1) the lawyer's testimony relates to an uncontested issue or matter; (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or (3) the lawyer has obtained informed written consent from the client"). Accordingly, this issue must be addressed at the Final Pretrial Conference.

## V.     BIFURCATION OF ISSUES [L.R. 16-4.3]

The parties have agreed to bifurcate the issue of damages. Accordingly, unless Plaintiff can meet its burden of proving liability by Defendants, the issue of Defendants' damages will not be tried (and likewise, there will be no testimony or evidence concerning Defendants' profits or finances).

## VI.    JURY TRIAL [L.R. 16-4.4]

The parties have agreed to waive a jury trial and instead will present their arguments and evidence to the Court by way of a bench trial.

## VII.   ATTORNEYS' FEES [L.R. 16-4.5]

Because Plaintiff did not register its alleged copyrights before the commencement of Defendants' alleged infringement, Plaintiff is statutorily barred from recovering attorneys' fees in connection with its first claim for relief. *See* 17 U.S.C. §412. However, should Defendants prevail here, they are not aware of any similar bar on their right to request an award of their prevailing party fees under 17 U.S.C. 505. Consequently, Defendants anticipate filing a post-trial motion for fees should they prevail on their defense to Plaintiff's first claim for relief.

Defendants also reserve their right to file a renewed Rule 11 Motion for Sanctions based on the content of Plaintiff's pre-trial or post-trial pleadings, in which they will seek an award of attorneys' fees against Plaintiff and its trial counsel. As the Court should recall, Defendants previously filed a Rule 11 motion at the outset of this action. While the Court recognized at that time that Defendants had "presented some evidence that contradicts the allegations in

Plaintiff's Complaint," the Court ultimately denied Defendants' Rule 11 motion on the basis that Defendants' contentions were premature in the absence of a complete evidentiary record. [*See* Dkt. 35].

## VIII.  ABANDONMENT OF ISSUES [L.R. 16-4.6]

To the extent that Defendants have previously raised contentions that are not addressed above, Defendants do not intend to pursue those contentions at trial.

Dated:  July 5, 2024                                     LAVELY & SINGER PC

By:  /s/ David B. Jonelis
　　　DAVID B. JONELIS
Attorneys for Defendants
THE ROYALTY FAMILY, INC.
ANDREA ESPADA, and ALI SALEH