UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL RECORDS LLC, | No. CV 23-5797 PA (BFMx) |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| THE ROYALTY FAMILY, INC., et al., | |
| Defendants. | |

Plaintiff Continental Records LLC ("Plaintiff") commenced this action on July 18, 2023. Plaintiff's Complaint alleges claims for trademark infringement and tortious interference with contractual relations. The Complaint names as defendants The Royalty Family, Inc., Andrea Espada and Ali Saleh (collectively, "Defendants").

The Court conducted a bench trial on August 13, 2024. The parties then filed their respective proposed Findings of Fact and Conclusions of Law, and their objections to each other's proposed Findings of Fact and Conclusions of Law.

The Court now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

I. <u>Findings of Fact</u>

1. Defendants Andrea Espada ("Espada") and Ali Saleh ("Saleh") are a married couple that formed defendant corporation The Royalty Family, Inc. ("The Royalty Family") to produce and publish video content on their family YouTube channel. (Saleh Dec. ¶ 2.)

2. Plaintiff Continental Records, LLC ("Continental") and third party Will Cano ("Cano") are parties to a May 1, 2018 personal services agreement (the "Continental Services Agreement"). (Trial Ex. 11.)

3. Continental and Cano are parties to a May 1, 2018 co-publishing agreement (the "Continental Co-Publishing Agreement"). (Trial Ex. 12.)

4. Pursuant to Paragraph 1 of the Continental Co-Publishing Agreement, Cano assigned to Continental half of his copyright interest in any musical composition he created during the term of the Continental Co-Publishing Agreement. (<u>Id.</u>)

5. Pursuant to Paragraph 1 of the Continental Co-Publishing Agreement, Cano retained half of his copyright interest in any musical composition he created during the term of the Continental Co-Publishing Agreement. (<u>Id.</u>)

6. Cano rendered personal assistant services to Defendants from in or around February 2020 until in or around November 2020. (Espada Dec. ¶ 5; Saleh Dec. ¶ 5.)

7. At the time that Cano began rendering personal assistant services to Espada and Saleh, Defendants were not aware of any agreement between Cano and Continental. (Espada Dec. ¶ 9; Saleh Dec. ¶ 17.)

8. May 2020 was the first time that any representative of Continental Records communicated with Defendants, when Continental's principal Ivan Leon ("Leon") sent an email to Espada. (Espada Dec. ¶ 10; Saleh Dec. ¶ 18.)

9. Leon's May 14, 2020 email stated that Mr Cano should not have signed an agreement with Defendants because he was "exclusive to Continental records . . . " (Trial Ex. 105.)

10. Leon's May 14, 2020 email referenced "text messages" between Leon and Espada but Plaintiff did offer those messages as evidence or provide any information as to when those text messages occurred. (Trial Ex. 105.)

11. After Defendants learned that Cano was under contract with Plaintiff, Cano repeatedly assured Defendants that he was allowed to write and perform songs and appear on Defendants' YouTube channel. (Espada Dec. ¶ 12; Saleh Dec. ¶¶ 20-23; Trial Transcript at p. 89:8-12.)

12. Cano and The Royalty Family are parties to a March 18, 2020 personal services agreement ("PSA"), which set forth the scope of Cano's personal assistant services and his compensation. (Trial Ex. 4.)

13. The Court finds that Cano's testimony that he did not sign the PSA (Cano Dec. ¶ 13) is not credible.

14. In May 2020, Leon acknowledged that he was aware of an existing agreement between The Royalty Family and Cano. (Trial Ex. 105; Espada Dec. ¶ 11; Saleh Dec. ¶ 19.

15. Section 4.2 of the the PSA states: "[Cano] agrees that any and all Work Product shall be the sole and exclusive property of [The Royalty Family]. [Cano] hereby irrevocably assigns to [The Royalty Family] all right, title and interest worldwide in and to such Work Product and all intellectual property rights associated with such Work Product (including, but not limited to, patent rights, copyrights, trade secrets, trademarks, mask works, sui generis database rights etc.)." (Trial Ex. 4.)

16. Section 4.2 of the PSA defines the term "Work Product" as "any and all works of authorship, mask works, designations, designs, know how, ideas, concepts, information, materials, processes, data, software, programs, improvements, designs, and/or artwork that is solely or jointly conceived, or reduced to practice by [Cano] in the course of any services performed for [The Royalty Family] or with the use of materials of [The Royalty Family] during the term of this Agreement." (Id.)

17. While working for Defendants, Cano repeatedly appeared in Defendants' YouTube videos. Cano appeared in his first video on The Royalty Family YouTube channel

on January 25, 2020, and his final video on The Royalty Family YouTube channel on September 20, 2020.  (Trial Exs. 19-32; Cano Dec. ¶ 9; Saleh Dec. ¶¶ 10, 16.)

18. Based on conversations with Cano, Leon was aware that Cano was appearing on Defendants' YouTube channel prior to May 2020.  (Cano Dec. ¶ 11; Uribe Dec. ¶ 8; Trial Ex. 105; Trial Transcript at pp. 20-21:23-1.)

19. Cano co-wrote the lyrics to the musical composition "One Girl" with Espada, Saleh, and their minor child Ferran during a series of writing sessions that took place in April and May of 2020.  (Espada Dec. ¶ 7; Saleh Dec. ¶¶ 12, 14.)

20. In April of 2020, Cano performed the first part of "One Girl" with Espada and Saleh's minor son Ferran, knowing that video of the performance would be published on The Royalty Family YouTube channel.  (Saleh Dec. ¶ 13.)

21. Cano consented to and facilitated the use of the lyrics to the song "One Girl" in The Royalty Family video entitled "Our 9 Year Old Son Has a SECRET CRUSH!," which was published with his knowledge on The Royalty Family's YouTube channel on April 30, 2020.  (Cano Dec. ¶ 7; Saleh Dec. ¶ 13.)

22. Cano co-wrote the lyrics to the musical composition "Baby Girl" with Espada, Saleh, and their minor child Ferran during a series of writing sessions that took place in June of 2020.  (Espada Dec. ¶ 8; Saleh Dec. ¶ 15.)

23. Cano and The Royalty Family are parties to a June 29, 2020 music release agreement ("Music Release") in connection with the musical composition "Baby Girl." (Trial Ex. 14.)

24. The Court finds that Cano's testimony that he did not sign the Music Release (Cano Dec. ¶ 13) is not credible.

25. Cano consented to and facilitated the use of the lyrics to the song "Baby Girl" in The Royalty Family video entitled "The BIGGEST DAY of Ferran's LIFE! (Behind The Scenes MUSIC VIDEO)" which was published with his knowledge on The Royalty Family's YouTube channel on September 17, 2020.  (Cano Dec. ¶¶ 8-9; Saleh Dec. ¶ 16.)

26. Cano consented to and facilitated the use of the lyrics to the song "Baby Girl" in The Royalty Family video entitled "Ferran - Baby Girl (Official Music Video)" which was published with his knowledge on The Royalty Family's YouTube channel on September 20, 2020. (Id.)

27. Leon's April 26, 2022 email to Espada stated that the terms of Cano's contract prevented him from appearing in The Royalty Family's videos. (Trial Ex. 18.)

28. The first time Defendants reviewed a copy of any agreement between Cano and Continental was after Continental filed this action on July 18, 2023. (Espada Dec. ¶ 13; Saleh Dec. ¶ 21.)

29. Continental obtained a copyright registration for the lyrics to the composition "One Girl" until June 29, 2023. (Trial Ex. 9.)

30. Continental obtained a copyright registration for the lyrics to the composition "Baby Girl" on June 29, 2023. (Trial Ex. 10.)

## II. Conclusions of Law

1. Espada and Saleh are co-authors of the lyrics to the composition "One Girl." See 17 U.S.C. § 101; Ashton-Tate Corp. v. Ross, 916 F.2d 516, 522 (9th Cir. 1990)

2. As co-authors of the lyrics to the composition "One Girl," Andrea Espada and Ali Saleh had the right to use the lyrics without Continental's consent. See 17 U.S.C.§ 201(a); Ashton-Tate Corp. v. Ross, 916 F.2d 516, 522 (9th Cir. 1990).

3. Because Andrea Espada and Ali Saleh are co-authors of the lyrics to the composition "One Girl," Defendants cannot be held liable for infringing the copyright in those lyrics. Id.

4. Espada and Saleh are co-authors of the lyrics to the composition "Baby Girl." See 17 U.S.C. § 101.

5. As co-authors of the lyrics to the composition "Baby Girl," Espada and Saleh had the right to use the lyrics without Continental's consent. See 17 U.S.C. §201(a); Ashton-Tate Corp. v. Ross, 916 F.2d 516, 522 (9th Cir. 1990).

6. Because Espada and Saleh are co-authors of the lyrics to the composition "Baby Girl," Defendants cannot be held liable for infringing the copyright in those lyrics. Id.

7. Under the Co-Publishing Agreement, Cano retained a 50% ownership in the copyright to the lyrics of "One Girl" and "Baby Girl." (Trial Ex. 12.)

8. Cano validly assigned to The Royalty Family his rights in and to the musical compositions "One Girl" and "Baby Girl" under the PSA. (Trial Ex. 101.) See 17 U.S.C § 201(d)(1).

9. Accordingly, Defendants cannot be held liable for infringing the copyright in those lyrics. See 17 U.S.C. §201(a); Ashton-Tate Corp. v. Ross, 916 F.2d 516, 522 (9th Cir. 1990).

10. Continental is not entitled to recover statutory damages or its attorneys' fees under the Copyright Act because its copyrights to "One Girl" and "Baby Girl" were not registered (1) within three months of the publication of the work, or (2) before the commencement of the first act of alleged infringement. See 17 U.S.C. § 504(a) and (c); Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 699 (9th Cir. 2008); Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 707 n.5 (9th Cir. 2004); Mackie v. Rieser, 296 F.3d 909, 912 n.3 (9th Cir. 2002).

11. Plaintiff failed to timely conduct discovery relating to its damages in this case, and did not show due diligence or good cause when it asked the Court to extend the discovery deadline. (Docket No. 43.)

12. Plaintiff failed to establish, by a preponderance of the evidence, the amount of damages Plaintiff suffered as a result of the alleged infringement or due to the alleged tortious interference with contract.

13. Defendants cannot be held liable for interfering with the Continental Services Agreement or Continental Co-Publishing Agreement because they had no knowledge of the relevant terms of the Continental Services Agreement or Continental Co-Publishing Agreement until after their business relationship with Cano had already terminated.

See Pacific Gas & Electric v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (holding that a plaintiff must allege a defendant's knowledge of the contract at issue in order to state a claim).

14. Because Defendants had no knowledge of the contractual agreement between Cano and Continental, Defendants could not have intended to induce a breach of those agreements by Cano. See Pacific Gas & Electric v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (holding that a plaintiff must allege a defendant's knowledge of the contract at issue and intentional acts in order to induce a breach of the contract in order to state a claim).

15. Because Defendants relied on Cano's representations that he was permitted to write songs, appear and perform on Defendants' YouTube channel, Defendants could not have intended to induce a breach of Cano's agreements with Continental. See Pacific Gas & Electric v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (holding that a plaintiff must allege intentional acts designed to induce a breach of the contractual relationship in order to state a claim).

16. Defendants cannot be held liable for intentionally interfering with the contractual arrangement between Cano and Continental because there is no evidence of that Continental suffered any damages as a result of the alleged conduct. See Pacific Gas & Electric v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (holding that a plaintiff must allege "resulting damage" in order to state a claim).

17. Accordingly, the Court finds in favor of Defendants and denies Plaintiff any relief. The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law.

IT IS SO ORDERED.

DATED: October 31, 2024

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE